IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION


QUALITY INFUSION CARE, INC.,     §
                                 §
            Plaintiff,           §
                                 §
v.                               §      CIVIL ACTION NO. H-06-1689
                                 §
UNICARE HEALTH PLANS OF TEXAS,   §
                                 §
            Defendant.           §


                   **MEMORANDUM OPINION AND ORDER**


    Pending before the court is Defendant UniCare's 12(b)(6) Motion to Dismiss (Docket Entry No. 8).  For the reasons discussed below, defendant's motion will be granted.


                          **I.  Background**

    Plaintiff, Quality Infusion Care, Inc. ("Quality"), is a licensed pharmacy that specializes in providing home infusion therapy, a pharmaceutical service to patients who are seriously ill.  One such patient, Ralph Robbins, was covered by an ERISA-governed employee welfare benefit plan (the "Plan") administered by defendant, UniCare Health Plans of Texas ("UniCare").  Robbins assigned all of his rights, benefits, and claims under the Plan to Quality, and Quality provided drugs to Robbins from April 7, 2005,

through April 19, 2005.[1]  When Quality sought payment from UniCare for the drugs it provided to Robbins, UniCare refused payment, asserting that Quality was an out-of-network provider under the terms of the Plan.

Quality sued UniCare in state court, claiming that UniCare was in violation of the Texas "Any Willing Provider" ("AWP") statute.[2] UniCare removed the action to this court, asserting federal-question jurisdiction based on preemption under ERISA, 29 U.S.C. § 1001, et seq. (Docket Entry No. 1)  This court denied Quality's motion to remand, citing Judge Lee Rosenthal's opinion in Quality Infusion Care, Inc. v. Aetna Health, Inc., No. H-05-3308, 2006 WL 1155254 (S.D. Tex. Apr. 27, 2006).  (Docket Entry No. 13)  UniCare now moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the

---

[1]The total bills incurred by Quality are unclear from the record.  Plaintiff's petition states that its medical bills were approximately $11,337.36.  Plaintiff's Original Petition, Docket Entry No. 1-B, p. 3.  However, the Joint Pretrial Order states that Quality's charges totaled $20,473.77 and that UniCare has paid $4,850.00 of that amount.

[2]Plaintiff's Original Petition, Docket Entry No. 1-B, p. 4.

complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)). "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 998. See also Conley v. Gibson, 78 S. Ct. 99, 102 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

### III. Analysis

The Texas AWP statute states, in part, that

a health insurance policy or managed care plan . . . may not:

   (1) prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by that policy or interfere with that person's selection of

-3-

>     a pharmacy or pharmacist; [or]
>        (2) deny a pharmacy or pharmacist the right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy or plan . . .

Tex. Ins. Code Ann. art. 21.52B, § 2(a)(1)-(2) (Vernon 2005). Quality is not seeking an injunction requiring UniCare to enter into a care-provider agreement under § 2(a)(1). Instead, Quality seeks payment for the prescription drugs it provided to Robbins under § 2(a)(2). "Quality has asserted no other claims against [UniCare]."[3] UniCare argues that Quality's claim is completely preempted by ERISA, and that Quality therefore fails to state a claim.[4]

There are two types of preemption under ERISA: "complete preemption" under section 502, 29 U.S.C. § 1132, and "express, or conflict preemption" under section 514, 29 U.S.C. § 1144. ERISA's civil-enforcement provisions under section 502 provide, in part, that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

---

[3]Plaintiff's Response to Defendant UniCare's 12(b)(6) Motion to Dismiss and Plaintiff's Motion to Remand, Docket Entry No. 10, p. 2; Plaintiff's Original Petition, Docket Entry No. 1-B, p. 4.

[4]Defendant UniCare's 12(b)(6) Motion to Dismiss, Docket Entry No. 8, pp. 4-7.

rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "This integrated enforcement mechanism, ERISA § 502(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2495 (2004). Therefore, complete preemption arises under section 502 when a state-law cause of action "duplicates, supplements, or supplants" one of the remedies provided in that section. Id. UniCare argues that Quality's claim under the Texas AWP statute is completely preempted under section 502.[5]

Express or conflict preemption under section 514 exists when state-law claims are asserted that "relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). A state-law claim may "relate to" a benefit plan even if the state law is not specifically designed to affect such plans or if the effect is only indirect. Ingersoll-Rand Co. v. McClendon, 111 S. Ct. 478, 484 (1990). However, state laws are saved from conflict preemption if they "regulate" insurance. 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has held that for this savings clause to apply such state laws must be specifically directed toward entities engaged in insurance and must substantially affect

---

[5]Defendant UniCare's 12(b)(6) Motion to Dismiss, Docket Entry No. 8, pp. 4-7.

the risk-pooling arrangement between the insurer and the insured to come within this savings clause.  Kentucky Ass'n of Health Plans, Inc. v. Miller, 123 S. Ct. 1471, 1479 (2003).  In Miller various health maintenance organizations ("HMOs") brought a lawsuit seeking a determination that Kentucky's Any Willing Provider statute, which prohibited health plans from discriminating against providers who were willing to meet terms and conditions for plan participation, were conflict preempted by ERISA.  The Supreme Court held that Kentucky's AWP statute fell within the savings clause of section 514 and therefore was not preempted by ERISA.  Id.  Quality argues that the Miller decision, when read together with the Davila decision, dictates the result that the Texas AWP statute is not completely preempted because, although Davila was decided only 14 months after Miller, the "Supreme Court's decision not to address Miller or Davila together can only lead to the conclusion that AWP statutes are not completely preempted."[6]

The court is not persuaded by Quality's argument.  The Miller court had no occasion to consider complete preemption under section 502 of ERISA because Miller was not an action brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Furthermore, the Davila

---

[6]Plaintiff's Response to Defendant UniCare's 12(b)(6) Motion to Dismiss and Plaintiff's Motion to Remand, Docket Entry No. 10, p. 8.

court expressly stated that section

> 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502. Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as "regulating insurance" will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

Davila, 124 S. Ct. at 2500. It is therefore not inconsistent with Miller to conclude that an AWP statute might fall within section 514's savings clause, yet still be completely preempted when it encroaches on Congress's intent to make the ERISA's civil enforcement remedy exclusive. Cf. Prudential Ins. Co. of America v. Nat'l Park Medical Center, Inc., 413 F.3d 897 (8th Cir. 2005) (finding that the Arkansas AWP statute was not *conflict* preempted under the savings clause analysis in Miller, but concluding that damages sought under a civil penalties portion of the statute for any cause of action that could have been brought under ERISA section 502 would be subject to *complete* preemption under the Davila analysis).

Applying Davila, the court concludes that Quality's claim is completely preempted by ERISA section 502. Where a claim could have been brought under ERISA section 502(a)(1)(B), and where no other independent legal duty is implicated by the defendant's actions, the plaintiff's cause of action is completely preempted by ERISA section 502(a)(1)(B). Davila, 124 S. Ct. at 2496. Here, the only action complained of is UniCare's failure to reimburse Quality

for the cost of the drugs supplied to Robbins under his ERISA-governed Plan, the benefits of which were assigned to Quality.[7] The only relationship UniCare has with Quality is through its administration of the employee welfare benefit plan. As assignee of Robbins' benefits under the Plan, Quality steps into the beneficiary's shoes and can only claim as much as Robbins was entitled to under the Plan. The claim therefore could have been brought under ERISA section 502(a)(1)(B).

The court also concludes that the duties imposed by the Texas AWP statute do not arise independently of ERISA or the Plan terms. Much like the statute analyzed in <u>Davila</u> (the Texas Health Care Liability Act), the Texas AWP statute creates no obligation on the part of UniCare to provide coverage outside of the Plan's limits. Instead, the Texas AWP statute states that a "health insurance policy or managed care plan . . . may not prohibit or limit a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider <u>under the policy</u> to furnish pharmaceutical services offered or <u>provided by that policy</u> . . . ." Tex. Ins. Code art. 21.52B § 2(a)(1) (emphasis added). A managed care entity thus could not be subject to liability under the Texas AWP § 2(a)(1) if it denied treatment not covered by the health care plan it was administering. An interpretation of the Plan is therefore an essential part of a Texas AWP § 2(a)(1) claim, and

---

[7]Plaintiff's Original Petition, Docket Entry No. 1-B, p. 4.

liability would only exist because of UniCare's administration of the ERISA-regulated benefit Plan.  Because UniCare's potential liability under the Texas AWP statute derives entirely from the rights and obligations established by the Plan, its state-law claim is not independent of the federally regulated Plan.

The court concludes that Quality's claim is completely preempted by ERISA section 502.  Cf. Quality Infusion Care Inc. v. Aetna Health Inc., No. 05-3308, 2006 WL 3813774 (S.D. Tex. Dec. 26, 2006) (slip opinion) (finding complete preemption in a nearly identical case).  See also Davila, 124 S. Ct. at 2496-99 (holding that there was complete preemption where liability under a state statute depended on the rights and obligations established by the ERISA-governed plan).  The only cause of action asserted by Quality is UniCare's violation of the Texas AWP statute.[8]  Quality has therefore failed to state a legally viable cause of action in its petition and it must therefore be dismissed.  See St. Luke's Episcopal Hosp. Corp. v. Stevens Transp., Inc., 172 F. Supp.2d 837, 844-45 (S.D. Tex. 2001).

## IV.  Conclusion and Order

For the reasons stated above, the court concludes that plaintiff's claim is completely preempted by ERISA and that plaintiff has therefore failed to state a claim upon which relief

---

[8]Plaintiff's Original Petition, Docket Entry No. 1-B, p. 4.

can be granted.  Accordingly, Defendant UniCare's 12(b)(6) Motion to Dismiss (Docket Entry No. 8) is **GRANTED**, and this action will be dismissed with prejudice.

**SIGNED** at Houston, Texas, on this 8th day of March, 2007.

```
                              _____
                                     SIM LAKE
                              UNITED STATES DISTRICT JUDGE
```